IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>    Defendants. | Case No. 24-cv-1611 |

## COMPLAINT

Plaintiff[1], ▇▇▇▇▇▇▇, LLC ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against the entities identified on Schedule A hereto (collectively, "Defendants")[2]. In support thereof, Plaintiff states as follows:

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because the claim in this action is brought under the Copyright Act, 17 U.S.C. § 101, *et seq.*

---

[1] Plaintiff's name (and all other information regarding Plaintiff's identity, trademark, copyrights, or the names of Defendants) is being temporarily withheld to prevent Defendants from obtaining advance notice of this action and Plaintiff's accompanying ex parte Motion for Entry of Temporary Restraining Order and transferring funds out of the accounts that Plaintiff seeks to retrain. Plaintiff is identified on the Certificate of Registration for Plaintiff's Trademark, which is included as Exhibit 1 hereto and filed under seal. Plaintiff will file a sealed unredacted version of this complaint concurrently with this redacted version and intends to proceed as John Doe only until the time Plaintiff has been able to formally serve the Defendants and provided notice of motion for the Preliminary Injunction following expiration of the Temporary Restraining Order.

[2] Plaintiff is currently unable to identify the name of several of the Defendants on Schedule A due to how the sellers are listed on the e-commerce platforms (Doe Nos. 147-154). Plaintiff will amend Schedule A to the Complaint once these sellers' identities have been provided by the respective third-party platforms pursuant to the Temporary Restraining Order.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through their operation of, or assistance in the operation of, the fully interactive, commercial Internet stores operating under the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"), as well as the shipment of products offered for sale on those Defendant Internet Stores. Specifically, Defendants manufacture, list for sale, sell, and/or ship products to Illinois residents which embody unauthorized and unlicensed versions of Plaintiff's copyright, the Registration for which is attached hereto as Exhibit 1 ("Plaintiff's Copyright"). Defendants have committed and have knowingly participated in the commission of tortious acts in Illinois, causing Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3. Plaintiff manufactures and sells novelty puzzles depicting Plaintiff's Copyright, ▮ ▮. This action has been filed by Plaintiff to combat online sellers selling, or offering for sale, identical or substantially similar products embodying Plaintiff's Copyright, or substantially similar versions thereof (the "Infringing Products") which are marketed and sold with product listings that also feature infringing versions of Plaintiff's Copyright.

4. The Defendant Internet Stores share unique identifiers establishing a logical relationship between them and reflecting that Defendants' operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation, including changing the names of their stores multiple times,

opening new stores, helping their friends open stores, and making subtle changes to their product listings and/or Infringing Products.

5.   Plaintiff is forced to file this action to combat Defendants' infringement of its Plaintiff's Copyright. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's copyrights and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it is sustaining.

## THE PARTIES

### Plaintiff ▮▮▮▮, LLC

6.   Plaintiff is a limited liability company organized and existing under the laws of the state of California, having a principal place of business at ▮▮▮▮, Costa Mesa, CA 92626.

7.   Plaintiff is the creator and seller of high-quality novelty toys and gifts, and related products, including the "▮▮▮▮" puzzle depicting Plaintiff's Copyright at issue in this Complaint ("Plaintiff's Product"), which Plaintiff markets and sells under the brand name and registered trademark ▮▮▮▮.

8.   The Certificate of Registration for Plaintiff's Copyright (Reg. No. ▮▮▮▮) and an example of the corresponding image are attached hereto as Exhibit 1.

9.   Since first introducing Plaintiff's Product in February 2021, Plaintiff has sold over 156,000 units and generated over $1,500,000 million in revenue from sales through Plaintiff's own website (▮▮▮▮.com) and Amazon storefront, as well as through their sole distributor (selling Plaintiff's Products on both Target.com and Walmart.com), and through hundreds of independent gift and toy stores across the United States. Notably, sales of Plaintiff's

Product continue to grow significantly year over year, selling more than five times as many units in 2022 as in 2021, and more than doubling from 2022 to 2023. Plaintiff also expends a great deal of funds on promoting Plaintiff's Product, having spent more than $277,000 since 2021 to advertise Plaintiff's Products on Amazon alone, with more than $24,000 spent in 2024 already, and spends on average $15-50 per day advertising on social media.

10. Plaintiff has received extensive editorial coverage and press in various magazines and other publications throughout the world, including publications and websites such as CNN, Newsday, Women's Health magazine, Popular Science, BuzzFeed, Mental Floss, Thrillist, LifeHacker and more. Plaintiff's Product has also achieved an impressive rating of 4.7 out of 5 stars on Amazon.

11. Plaintiff has never assigned or licensed Plaintiff's Copyright to any of the Defendants in this matter.

12. Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and publicly display Plaintiff's Copyright.

**The Defendants**

13. Defendants are individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business or assist in business conducted throughout the United States (including within the State of Illinois and this Judicial District) through the manufacturing, online advertising and offering for sale, importation, and distribution of the Infringing Products, which are also marketed and sold with product listings that feature infringing versions of Plaintiff's Copyright via various online stores, including on Alibaba, Aliexpress, Amazon, DHgate, eBay, Shopify, Temu, Walmart, and Joybuy.

14. Defendants appear to be an interrelated group of infringers, who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine and/or authorized copies of Plaintiff's Product, while they are actually selling inferior, unauthorized imitations of Plaintiff's Product. The Defendant Internet Stores share unique identifiers, such as the following: common design elements, the same or similar Infringing Products that they offer for sale, similar Infringing Product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced Infringing Products and volume sales discounts. The foregoing similarities establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their infringing operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit/infringing network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### DEFENDANTS' UNLAWFUL CONDUCT

15. The success of Plaintiff's Product has resulted in significant infringement of Plaintiff's Copyright. Consequently, Plaintiff maintains a program which continually investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. Plaintiff has identified fully interactive e-commerce stores, including the Defendant Internet Stores, offering for sale and/or selling Infringing Products to consumers in this Judicial District and throughout the United States which are also marketed and sold with product listings that feature infringing versions of Plaintiff's Copyright. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and generate over $509 billion in

annual online sales in 2016 alone. *See* Exhibit 2, Report concerning "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans dated January 24, 2020, at 4. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2018 was over $1.4 billion. *See id*. at 8.

16. E-commerce retail platforms such as those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters/infringers to routinely use false or inaccurate names and addresses when registering with these e-commerce platforms. *See* Ex. 2 at 22 (finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and stating that "[s]ignificantly enhanced vetting of third-party sellers" is necessary).

17. Online sellers engaged in counterfeiting and related infringements hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts. *See* Exhibit 2 at p. 22. While Amazon has recently taken steps to attempt to address these shortcomings, the foregoing deficiencies largely remain.

18. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Defendant Internet Stores aliases identified Schedule A attached hereto, offering shipping to the United States, including Illinois, accepting payment in U.S. dollars and, on information and belief, having sold the Infringing Products to residents of Illinois using product listings that also feature infringing versions of Plaintiff's Copyright.

19. Defendants employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing Defendant Internet Stores so that they appear to unknowing consumers to be online retailers, outlet stores, or wholesalers authorized by Plaintiff to use Plaintiff's Copyright and sell Plaintiff's Product. Defendant Internet Stores appear sophisticated and accept payment in U.S. dollars via credit cards, Amazon Pay, Western Union, and/or PayPal. Defendant Internet Stores use of product listings that feature infringing versions of Plaintiff's Copyright also make it very difficult for consumers to distinguish such stores from retailers actually authorized to sell products using Plaintiff's Copyright. Plaintiff has not licensed or authorized Defendants to copy, distribute, or publicly display any of Plaintiff's Copyright, and none of the Defendants are authorized to do so.

20. On information and belief, Defendants have engaged in fraudulent conduct when registering the Defendant Internet Stores by providing false, misleading, and/or incomplete information to e-commerce platforms, including at least Alibaba, Aliexpress, Amazon, DHgate, eBay, Shopify, Temu, Walmart, and Joybuy. On information and belief, certain Defendants have anonymously registered and maintained aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

21. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling the Infringing Products on e-commerce platforms such as Alibaba, Aliexpress, Amazon, DHgate, eBay, Shopify, Temu, Walmart, and Joybuy. Such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identities and the full scope and interworking of their operations, and to avoid being shut down or held accountable for their infringement.

22. Groups of counterfeiters and infringers such as Defendants here are typically in communication with each other. They regularly participate in QQ.com chat rooms, and also communicate through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

23. Groups such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation in spite of enforcement efforts. Analysis of financial account transaction logs from previous similar cases indicates that off-shore sellers similar to Defendants regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court. Here, on information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such off-shore accounts based outside of the jurisdiction of this Court. On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their infringement of intellectual property rights.

24. Defendants' unauthorized reproduction, distribution, and public display of Plaintiff's Copyright is irreparably harming Plaintiff.

## COUNT I
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*)

25. Plaintiff re-alleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 24 above.

26. Plaintiff's Copyright constitute creative, original works of authorship, fixed in a tangible medium of expression, and protectable under U.S. copyright law. *See* 17 U.S.C. § 102.

27. Plaintiff is the owner of valid and enforceable copyrights in Plaintiff's Copyright.

28. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for Plaintiff's Copyright and has obtained valid copyright registrations for Plaintiff's Copyright.

29. Defendants do not have any ownership interest in Plaintiff's Copyright.

30. Defendants had access to the Plaintiff's Copyright via the internet.

31. Without authorization from Plaintiff, or any right under the law, Defendants have, *inter alia*, willfully copied, reproduced, publicly displayed, and distributed, either copies and/or variations of Plaintiff's Copyright in connection with their operation of the Defendant Internet Stores and the sale of the Infringing Products, which embody designs that are identical to and/or substantially similar to Plaintiff's Copyright and which are sold using product listings that also feature infringing versions of Plaintiff's Copyright.

32. Defendants have, therefore, individually, as well as jointly and severally, infringed and continue to infringe Plaintiff's Copyright in violation of 17 U.S.C. § 501(a). *See* also 17 U.S.C. §§ 106(1), (3), (5).

33. Defendants reap the benefits of their unauthorized reproduction, public display, and distribution, of Plaintiff's Copyright through their receipt of substantial revenue, including substantial profit, driven by sales of their Infringing Products.

34. Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Infringing Products that capture the total concept and feel of Plaintiff's Copyright.

35. On information and belief, Defendants' infringement has been willful, intentional, malicious, and purposeful, and in disregard of, and with indifference to, Plaintiff's rights.

36. Defendants, by their actions, have caused financial injury to Plaintiff in an amount to be determined at trial.

37. Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff irreparable injury that cannot fully be compensated for or measured monetarily. Plaintiff has no adequate remedy at law for such injury.

38. In light of the foregoing, Plaintiff seeks: (i) Plaintiff seeks temporary, preliminary, and permanent injunctive relief prohibiting further infringement of Plaintiff's Copyright by Defendants pursuant to 17 U.S.C. § 502; and (ii) monetary relief in the form of statutory damages and attorneys' fees pursuant to 17 U.S.C. §§ 504(c)(2) and 505, or, in the alternative, actual damages pursuant to 17 U.S.C. § 504(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and entry of an Order directing as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from reproducing, publicly displaying, and distributing, Plaintiff's Copyright and all colorable imitations thereof, and in assisting third-parties in such activity, pursuant to 17 U.S.C. § 502;

2) That Defendants destroy all copies of Plaintiff's Copyright and all colorable imitations thereof made by, or made under the control of, Defendants;

3) That Plaintiff be awarded statutory damages based on Defendants' willful copyright infringement, pursuant to 17 U.S.C. § 504(c)(2), in an amount of $150,000 per infringed work;

4) That Plaintiff be awarded its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

5) Alternatively, should the Court not award Plaintiff statutory damages, that Defendants pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's Copyright as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

6) That Plaintiff be awarded any and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues triable as of right to a jury. Fed. R. Civ. P. 38(b).

Dated: February 27, 2024

Respectfully submitted,

/S/BRANDON BEYMER
BRANDON BEYMER (ARDC NO. 6332454)
DALIAH SAPER (ARDC NO. 6283932)
SAPER LAW OFFICES, LLC
505 N. LASALLE, SUITE 60654
CHICAGO, ILLINOIS 60654
(312) 527-4100
BRANDON@SAPERLAW.COM
DS@SAPERLAW.COM

ATTORNEYS FOR PLAINTIFF